IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:19-CR-227 |
| v. | ) |
| | ) The Honorable Anthony J. Trenga |
| MATTHEW BAILEY HASH, | ) |
| | ) Sentencing: December 20, 2019 |
| Defendant. | ) |

**GOVERNMENT'S POSITION ON SENTENCING**

The defendant, Matthew Hash, comes before the Court for sentencing after pleading guilty to conspiracy to commit wire fraud. As described below, Hash was a leader of an illegal scheme involving the fraudulent use of gift cards issued by Company A. Over the course of more than six months, Hash and his co-conspirators engaged in hundreds of fraudulent transactions using "cloned" Company A gift cards, that is, gift cards that were re-encoded with stolen account numbers of gift cards belonging to unknowing victims. Hash himself personally engaged in more than a hundred such transactions, and he recruited and directed co-conspirators to commit many more. Through his illegal acts, Hash has admitted that he is responsible for causing nearly $150,000 in losses to Company A and its customers.

In advance of Hash's sentencing hearing, the Government respectfully submits its position with respect to sentencing and moves for a one-level reduction in Hash's offense level, pursuant to U.S.S.G. § 3E1.1(b), for acceptance of responsibility. As correctly calculated in the Presentence Investigation Report ("PSR"), the Sentencing Guidelines recommend fifty-one to sixty-three months of imprisonment. Hash's leadership role in the offense, the scope and harmful nature of his criminal conduct, and his extensive criminal history warrant a sentence within the guidelines range. Yet the Government also credits that Hash quickly accepted

responsibility for his conduct. The Government therefore recommends that the Court sentence Hash to the low end of the guidelines range—fifty-one months of imprisonment—followed by three years of supervised release.

## BACKGROUND

### A. Nature of Offense

Company A is an apparel and home fashions retailer that operates stores across and outside the United States. *See* Statement of Facts ¶ 2 (Aug. 1, 2019) (Dkt. No. 27). It sells gift cards as part of its business. *See id.* ¶ 3. Each gift card contains a unique identifying number (hereinafter, "account number") that is printed on the card and electronically encoded on a magnetic strip on the card. *See id.* ¶ 4. When a gift card is scanned at a point of sale, the account number that is encoded on the card is charged. *Id.*

Hash's primary co-conspirator was Jarrod Gray, an Internal Fraud Investigator who was employed by Company A. *See id.* ¶ 6. In that capacity, Gray conducted internal fraud investigations of Company A employees in Northern Virginia and West Virginia. *Id.* Through his position, Gray had access to computer databases that contained information about Company A gift cards, such as the monetary balance and account numbers of outstanding gift cards. *Id.*

In December 2014, Hash was introduced to Gray at the Oxford House, a self-run sober living facility where Hash was residing. *See id.* ¶ 6; Aff. in Supp. of Criminal Compl. & Arrest Warrant ¶ 16 (Mar. 8, 2019) (Dkt. No. 2) ("Compl. Aff."). At or around this meeting, Hash and Gray entered into an illegal agreement to procure account numbers of outstanding Company A gift cards and fraudulently use them without the customers' authorization. *See* Statement of Facts ¶ 7. Pursuant to their agreement, Gray used his position at Company A to obtain account numbers for outstanding gift cards that Company A had issued, many of which had high credit

balances remaining. *See id.* With a magnetic card encoder, Gray then electronically encoded the converted account numbers onto the magnetic strips of Company A gift cards that did not have any balances on them—a process known as "cloning." *See id.* At times, Hash provided Gray with the blank gift cards to encode. *See id.*

Hash recruited, managed, and directed other co-conspirators to help him use the cloned gift cards at Company A stores. *See id.* ¶ 8. Hash and his co-conspirators used the cloned gift cards to purchase merchandise and new, "clean" gift cards (i.e., gift cards that were not cloned). *See id.* Hash and his co-conspirators later returned the merchandise at other Company A stores, receiving clean gift cards in exchange. *See id.* Hash then sold the clean gift cards for a profit, often through an online business that he operated called "Capital Gift Cards." *See id.* ¶ 9. Hash and Gray agreed to split these profits 50-50. *See* Compl. Aff. ¶ 18.

The conspiracy, as charged, lasted from approximately December 2014 to September 2, 2015. *See* Criminal Information (Aug. 1, 2019) (Dkt. No. 23). During that time, Hash and his co-conspirators engaged in hundreds of transactions using cloned gift cards at Company A stores across the nation. *See* Statement of Facts ¶ 20. Hash personally engaged in more than a hundred such fraudulent transactions, including in Maryland, the District of Columbia, Pennsylvania, Florida, Nevada, California, Delaware, New Jersey, Connecticut, and the Eastern District of Virginia. *See id.* ¶¶ 10-11. Hash has admitted that he is responsible for causing a loss of approximately $149,611.62 to Company A and its customers. *See id.* ¶ 20.

**B.** **Procedural History**

On March 8, 2019, the Government charged Hash by criminal complaint with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. *See* Criminal

Compl. (Mar. 8, 2019) (Dkt. No. 1).[1] Pursuant to the arrest warrant, Maryland law enforcement arrested Hash on June 3, 2019. *See* Mot. to Unseal 1 (June 4, 2019) (Dkt. No. 8). The following day, on June 4, Hash made his initial appearance in the District of Maryland, Greenbelt Division. *See United States v. Matthew Hash*, No. 8:19-mj-1961-GLS (D. Md.). The Maryland court conducted a detention hearing the same day, ordered Hash's detention, and directed the United States marshal to transport Hash to the Eastern District of Virginia. *See id.* On June 11, Hash made his initial appearance in the Eastern District of Virginia, and his detention was continued. *See* Minute Entry (June 11, 2019) (Dkt. No. 12); Minute Entry (June 19, 2019) (Dkt. No. 15).

The Government and Hash subsequently entered into a preindictment plea agreement. *See* Plea Agreement (Aug. 1, 2019) (Dkt. No. 26). On August 1, 2019, Hash appeared before this Court, waived his right to be charged by indictment, and pleaded guilty to a single-count information charging him with conspiracy to commit wire fraud. *See* Minute Entry (Aug. 1, 2019) (Dkt. No. 25). The Court originally scheduled the sentencing hearing for November 1, 2019, but on the parties' motion, it continued the hearing until December 20, 2019. *See* Order (Oct. 11, 2019) (Dkt. No. 30).

## DISCUSSION

In imposing a sentence within the statutory range, the Court must consider the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(a). These factors require the Court to

---

[1] The Government charged Jarrod Gray in a separate case before it charged Hash. On April 13, 2016, the Government charged Gray by criminal complaint with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. *See* Criminal Compl., *United States v. Jarrod Gray*, No. 1:16-cr-131-GBL (E.D. Va. Apr. 13, 2016) (Dkt. No. 1). Almost two months later, on June 8, 2016, Gray pleaded guilty to a single-count information charging him with the same. *See* Plea Agreement 1, *Gray*, No. 1:16-cr-131-GBL (E.D. Va. June 8, 2016) (Dkt. No. 19). Gray, who was a criminal history category I, was sentenced to eighteen months of imprisonment and three years of supervised release. *See* Judgment in a Criminal Case, *Gray*, No. 1:16-cr-131-GBL (E.D. Va. Sept. 27, 2016) (Dkt. No. 35).

consider the Sentencing Guidelines, the nature and circumstances of the offense, the history and characteristics of the defendant, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (4)-(7). The sentence should be "sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, protect the public from further crimes of the defendant, afford adequate deterrence to criminal conduct, and provide the defendant with necessary training and treatment. *Id.* § 3553(a). Using the § 3553(a) factors, the Court must "make an individualized assessment based on the facts presented" to determine the appropriate sentence. *United States v. Smalls*, 720 F.3d 193, 198 (4th Cir. 2013) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).

Conspiracy to commit wire fraud—the offense to which Hash has pleaded guilty—carries a maximum term of imprisonment of twenty years. *See* 18 U.S.C. §§ 1343, 1349. It also carries a maximum fine of $250,000 or not more than the greater of twice the gross gain derived by any person from the offense or twice the gross loss to a person other than Hash resulting from the offense, *see id.* § 3571(b)(3), (d), and maximum term of supervised release of three years, *see id.* § 3583(b)(2). *See id.* Based on the applicable Guidelines and § 3553(a) factors, the Government recommends that the Court sentence Hash to fifty-one months of imprisonment.

A. **A Term of Imprisonment of Fifty-One Months Is Consistent with the Sentencing Guidelines.**

Section 3553(a) requires the Court to consider the Sentencing Guidelines when sentencing a criminal defendant. *See* 18 U.S.C. § 3553(a)(4); *United States v. Helton*, 782 F.3d 148, 151 (4th Cir. 2015). Despite their advisory nature, the guidelines remain "the 'starting point' and 'initial benchmark' for sentencing." *United States v. Davis*, 855 F.3d 587, 595 (4th

Cir. 2017) (quoting *Beckles v. United States*, 137 S. Ct. 886, 894 (2017)). While the guidelines do not constrain the Court's discretion, they nevertheless guide that "discretion by serving as 'the framework for sentencing.'" *Beckles*, 137 S. Ct. at 894 (quoting *Peugh v. United States*, 569 U.S. 530, 542 (2013)).

Here, the Government agrees with the calculation of Hash's guidelines range in the PSR. As stipulated in the Plea Agreement, Hash's offense level is a level 21 before he is credited for acceptance of responsibility. *See* Plea Agreement 3. The Government agrees that Hash is entitled to a three-level reduction due to his acceptance of responsibility,[2] *see* U.S.S.G. § 3E1.1, which would net Hash a total offense level of 18. The Government further agrees that Hash is a criminal history category V. Where, as here, a defendant has an offense level of 18 and a criminal history category V, the Sentencing Guidelines advise a term of imprisonment of fifty-one to sixty-three months. *See id.* ch. 5, pt. A. The Government's recommended sentence of fifty-one months is at the low end of that range.

### B. The Other § 3553(a) Factors Support a Term of Imprisonment of Fifty-One Months.

In addition to being consistent with the Sentencing Guidelines, the recommended sentence of fifty-one months of imprisonment is consistent with the nature and circumstances of the offense. As outlined in the Statement of Facts, Hash was one of the principal leaders of the conspiracy. He formed the criminal agreement with Jarrod Gray, and then recruited and directed multiple individuals to engage in fraudulent transactions with cloned gift cards in furtherance of

---

[2] Hash timely notified the Government of his intention to plead guilty, thereby assisting authorities in the prosecution of his own misconduct. Accordingly, if the Court determines that Hash has accepted responsibility so as to earn the two-level reduction in U.S.S.G. § 3E1.1(a), the Government moves the Court to adjust his offense level downward by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

the conspiracy. Hash, moreover, personally engaged in more than a hundred such fraudulent transactions across the nation. Through his participation in the conspiracy, he is responsible for causing losses not just to Company A, but also to numerous victims who have not been identified. Hash has admitted that he caused almost $150,000 in losses, and that is a conservative estimate. The scope and harmful nature of the conspiracy, and Hash's prominent role in it, warrant a guidelines sentence in this case.

Moreover, in the course of the conspiracy, Hash demonstrated an utter disregard for the law and the consequences of his actions. In his Statement of Facts, Hash admits that the police searched his residence in April 2015, seizing numerous pieces of incriminating evidence (e.g., a magnetic card encoder/reader, cloned gift cards, etc.). *See* Statement of Facts ¶ 16. The execution of the search warrant should have been a wake-up call for Hash and prompted his withdrawal from the conspiracy. Yet Hash remained undeterred. As he has admitted, he remained an active participant in the conspiracy and did not tell Gray about the search warrant for months. *See id.* ¶ 17. In fact, in June 2015, Hash went on a fraudulent spree in which he personally engaged in more than a dozen transactions using cloned gift cards at Company A stores across at least four states. *See id.*

A guidelines sentence, moreover, would be consistent with Hash's history and characteristics. The PSR suggests that he enjoyed support and opportunities in life that are not available to many individuals who come before the Court. Nevertheless, Hash made the deliberate choice to engage in a fraudulent scheme that lasted more than six months. And, as the PSR also reflects, this choice was in keeping with a broader pattern of unlawful conduct. Even before he entered the fraudulent scheme, Hash had an extensive criminal history that included multiple convictions for property-related offenses—a 2010 conviction for theft in Ohio, a 2011

conviction for theft in Maryland, and a 2011 conviction for robbery in Maryland. In light of Hash's conduct and criminal history, a guidelines sentence is appropriate to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence.

Finally, the recommended term of imprisonment of fifty-one months would not create unwarranted sentencing disparities. While Gray received a sentence of only eighteen months of imprisonment, Hash's criminal history distinguishes him markedly from Gray and requires a more severe sanction. Hash is a criminal history V, whereas Gray was only a criminal history category I. *See* Def.'s Position on Sentencing 1, *Gray*, No. 1:16-cr-131-GBL (E.D. Va. Sept. 16, 2016) (Dkt. No. 26). Given his lack of criminal history, Gray was entitled to far more leniency than Hash. For a repeat offender like Hash, a guidelines sentence is appropriate to promote respect for the law and provide adequate deterrence.

## CONCLUSION

For the foregoing reasons, the Court should sentence Hash to a term of imprisonment of fifty-one months, followed by three years of supervised release.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____
Thomas W. Traxler
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone (703) 299-3746
Facsimile (703) 299-3980
Thomas.traxler@usdoj.gov

8

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of December, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

                                                                         /s/
                                            Thomas W. Traxler
                                            Assistant United States Attorney